UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA            )
                                    )
v.                                  )            No.  3:08-CR-118
                                    )
MICHAEL ISAAC BETHEL                )

## MEMORANDUM AND ORDER

By memorandum and order entered August 24, 2020, the Honorable Pamela L. Reeves denied several of the defendant's pending *pro se* motions, including one for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).   [Doc. 85]. [1] The compassionate release motion was denied due to the defendant's failure to exhaust his administrative remedies.

Now before the Court is the defendant's *pro se* "Relief Under 3582(c)(1)(A) Extraordinary and Compelling Reasons / and Default Judgment; See Document 85 Filed 8/24/20" [doc. 86], which the Court construes as a renewed motion for compassionate release.  The United States has responded in opposition to the motion [docs. 89, 93-94], and the defendant has not replied within the time allowed by this court's Local Rules.

The matter is now ripe for the Court's consideration.  For the reasons stated below, the defendant's renewed motion for compassionate release will be denied.

---

[1] Judge Reeves' memorandum and order sets forth the procedural history of this case, much of which need not be restated herein.

# I.  BACKGROUND

In May 2011, the Honorable Thomas W. Phillips sentenced the defendant to a net term of 384 months' imprisonment on two counts of using, carrying, and brandishing a firearm during and in relation to a crime of violence.  These convictions flowed from the defendant's five admitted armed robberies of cash advance businesses.

The defendant is presently housed at FCI Edgefield with a projected release date of February 23, 2037.  *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Dec. 7, 2020).  He moves for compassionate release due to the COVID-19 pandemic and his purported tuberculosis diagnosis.  [Doc. 84].  The defendant also speculates that he would receive a lesser term of imprisonment if sentenced today under current law.  [*Id.*]

## II.  COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons."  That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. District courts in this circuit have generally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but, as of November 20, 2020, are no longer to do so, at least as to compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, ___ F.3d ___, 2020 WL 6817488, at *7 (6th Cir. Nov. 20, 2020) (Guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release.").[2] "District courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Id.* at 11.

## A. Exhaustion

The defendant has now documented that he previously submitted a compassionate release request to the BOP, and that more than 30 days have passed since that request was received by the warden. [Doc. 86]. The Court thus has authority under § 3582(c)(1)(A) to address the defendant's renewed motion. *See Alam*, 960 F.3d at 832.

---

[2] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

## B. Merits

As mentioned above, in support of his original motion the defendant cited the COVID-19 pandemic and a purported tuberculosis diagnosis. He also argued that, if sentenced today, he would face a lesser term of imprisonment due to subsequent amendments to his statute of conviction.

Consistent with § 3582 and the Sixth Circuit's directive, this Court has considered the defendant's arguments and the broader facts of this case in light of the pertinent § 3553(a) factors. Pursuant to 18 U.S.C. § 3553(a),

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—

4

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The COVID-19 pandemic cannot alone justify compassionate release. *See, e.g.,*

*United States v. Shah*, No. 16-20457, 2020 WL 1934930, at \*2 (E.D. Mich. April 22, 2020)

("[S]peculation as to whether COVID-19 will spread through Defendant's detention

facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

BOP medical records submitted by the parties show that the defendant has been diagnosed with latent tuberculosis infection ("LTBI"). [Docs. 84, 93]. "TB bacteria can live in the body without making you sick. This is called latent TB infection. In most people who breathe in TB bacteria and become infected, the body is able to fight the bacteria to stop them from growing." *See* Latent TB Infection and TB Disease, https://www.cdc.gov/tb/topic/basics/tbinfectiondisease.htm (last visited Dec. 7, 2020). People with LTBI do not feel sick and do not have symptoms, but they "[m]ay develop TB disease if they do not receive treatment for [LTBI]." *Id.*

April 2020 imaging showed the defendant's lungs to be "clear." [Doc. 93]. The BOP provides tuberculosis screening to the defendant and has repeatedly provided him with LTBI medication. [Docs. 84, 93]. He has, however, repeatedly refused to complete the full course of treatment and his medical records thus note that he has "[r]efused LTBI treatment." [*Id.*].

Two points emerge from the medical record. First, the defendant has provided no documentation that LTBI impacts his functioning at this time or that it has heightened *his* risk of COVID-19 complications. Second, this Court will not find grounds for compassionate release created solely by a defendant's refusal to comply with

6

recommended medical care. The Court additionally notes that the BOP categorizes the defendant as Care Level 1. [Doc. 89]. "Care Level 1 inmates are less than 70 years of age *and are generally healthy.* They may have limited medical needs that can be easily managed by clinician evaluations every 6 to 12 months." *See* http://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited Dec. 7, 2020) (emphasis added).

Turning to the defendant's history and characteristics, his conduct in the instant case was beyond egregious. The defendant admittedly committed five armed robberies in July 2008. [Presentence Investigation Report ("PSR"), ¶¶ 25-29]. In the first, he jumped the counter, brandished his semiautomatic firearm, and "tied the employees with plastic flex cuffs and then advised them to lay down facing the floor." [*Id.*, ¶ 25]. In the second, he again brandished a firearm and told the occupants to "get the money and no one will get hurt." [*Id.*, ¶ 26]. In the third, he brandished and waved his firearm, jumped the counter, ordered everyone to get on the floor, tied up two victims with zip ties, and "told the victims that after he left that they should not get up for two minutes because someone was watching the business." [*Id.*, ¶ 27]. In the fourth, the defendant again jumped the counter, again brandished a firearm, grabbed an employee by the wrist, bound the employee's wrists and legs, and told her to not move for five minutes. [*Id.*, ¶ 28]. In the final robbery, the defendant placed his semiautomatic firearm against an employee's back, threatened that person's life, and tied up all of the workers. [*Id.*, ¶ 29]. In total, the defendant stole at least $110,000.00, most of which was not recovered. [*Id.*, ¶¶ 33, 36-38].

7

The Court has considered the victim impact statement filed by the United States. [Doc. 94]. The Court has also considered the victim impact summaries found in the PSR. In the first two robberies, after tying up the employees (both of whom were mothers of young children), the defendant "repeatedly cocked his gun while asking, 'Do you want to die?'" [PSR, ¶ 33]. One those victims "thought the defendant would shoot her and her co-worker because they could identify him." [*Id.*, ¶ 34]. The other victim stated that the robbery "affected every aspect of her life" and was "more than she can handle emotionally." [*Id.*, ¶ 35]. Her then-three-year-old son would cry when she left for work because he was afraid he would never see her again. [*Id.*]. A victim of a later robbery needed two surgeries due to being tied up. [*Id.*, ¶ 36]. She had not worked since the robbery because of the surgeries and frequent panic attacks. [*Id.*]. She would avoid her family, could no longer attend church, and suffered nightmares and insomnia. [*Id.*].

The defendant was sentenced at age 23 with a criminal history category of V, the second-highest in the federal system. [*Id.*, ¶ 55]. Prior convictions include reckless endangerment and malicious destruction (age 13), drug distribution (beginning at age 15), and firearm possession. [*Id.*, ¶¶ 46-47, 49-51]. Following each of his adult convictions, the defendant violated the conditions of his probation or parole. [*Id.*, ¶¶ 49-51]. His polysubstance abuse began at age 13 and continued through the date of his arrest. [*Id.*,¶ 70].

The defendant's conduct has not improved while in BOP custody. His BOP SENTRY Report lists seven disciplinary sanctions: absent from assignment; disruption of phone monitoring and accepting money without authorization; disruption of phone

8

monitoring (second); possession of suboxone; **possession of an icepick-like weapon** between the lockers in his cell; refusing to obey an order; and disruptive conduct. The BOP considers the defendant to have a high risk of recidivism.

Lastly, the Court recognizes that, if the defendant were sentenced today for the same counts of conviction, he would receive a lower term of imprisonment. *See* Fair Sentencing Act of 2018, § 403, Pub. L. No. 115-391, 132 Stat. 5194. Of course, Section 403 of the First Step Act applies only to persons who had not yet been sentenced as of Act's enactment date – December 21, 2018. *See* 132 Stat. 5194, 5222. The Court will not speculate as to what sentence the defendant might possibly receive today because it is unknown what plea agreement—if any—the United States might offer under current law given the egregious facts of this case. This issue is in any event outweighed by the defendant's criminal background and his ongoing misconduct while incarcerated.

As summarized herein, the Court has considered the relevant § 3553(a) factors, the facts of this case, the defendant's history and characteristics, and the arguments raised in the instant motion. Having done so, the Court does not find extraordinary and compelling reasons justifying the requested compassionate release. Compassionate release in this case would not reflect the seriousness of the instant offenses, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes of the defendant. The defendant's motion will accordingly be denied.

9

### III. APPOINTMENT OF COUNSEL

The defendant also asks for the appointment of counsel. There is no constitutional right to counsel in post-conviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."); *Foster v. United States*, 345 F.2d 675, 676 (6th Cir. 1965) (holding that the constitutional right to counsel does not extend to collateral proceedings). A district court has *discretion*, under 18 U.S.C. § 3006A(a)(2), to appoint counsel when "the interests of justice so require." In exercising that discretion, a court should consider several factors, including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).

The compassionate release arguments presented to the Court in this case are straightforward and familiar, not beyond the capability of an ordinary *pro se* litigant. Moreover, pursuant to this court's Standing Order SO-19-04, Federal Defender Services of Eastern Tennessee ("FDSET") has already been appointed to represent all defendants who file a *pro se* § 3582(c)(1)(A) motion, but FDSET has not chosen to make an appearance in this case.

The defendant's request for appointment of counsel will be denied.

## IV.  CONCLUSION

As provided herein, the defendant's renewed motion for compassionate release [doc.

86] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge